IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EQUITY PRIME MORTGAGE, LLC    *
            *
      Plaintiff,     *
            *
    vs.         *
            *
1st FINANCIAL, INC., et al.,     *
            *
      Defendants.    *
            *     Civil Action No. ADC-17-3754
            *
DONNA L. CASE, et al.,      *
            *
      Counter-Plaintiffs   *
            *
    vs.         *
            *
EQUITY PRIME MORTGAGE, LLC    *
            *
      Counter-Defendant.   *
            *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This matter is before the Court on two Motions: Defendants 1st Financial, Inc.'s ("FFI") and Donna L. Case, Tiffany Coffman, Brianna Fischer, Brandon Flohr, Kristen Owens, James Prince, Jared A. Vogt, and Tia Watkins' (collectively "Individual Defendants") Motion for Summary Judgment ("Defendants' Motion") on Plaintiff Equity Prime Mortgage, LLC's ("EPM") Complaint, and Defendants/Counter-Plaintiffs Case, Coffman, Flohr, Prince, and Vogt's Motion for Partial Summary Judgment ("Counter-Plaintiffs' Motion") (ECF No. 103) on their Counterclaim against EPM (ECF No. 29). After considering both Motions and the responses thereto, the Court finds that no hearing is necessary. See Loc.R. 105.6 (D.Md. 2021). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by

1

the parties, the Court finds there are genuine issues of material fact with respect to two of EPM's

claims, but none with respect to their remaining claims. Accordingly, the Court will GRANT

Defendants' Motion in part, and DENY the Motion in part. However, there are no genuine disputes

of material fact concerning Owens, so the Court will GRANT Defendant's Motion with respect to

Individual Defendant Owens. With respect to Counter-Plaintiffs' Motion, the Court finds there are

genuine disputes of material fact with respect to one claim, but none with respect to their remaining

claim. Accordingly, the Court will GRANT Counter-Plaintiffs' Motion in part, and DENY their

Motion in part.

### FACTUAL BACKGROUND

EPM is a mortgage lender that employed Individual Defendants as loan processors, loan

officers, and branch managers at their Baltimore and Crofton offices in early August 2017. ECF

No. 1 ¶¶ 4–13. As part of their employment at EPM, Case, Coffman, Fischer, Flohr, Prince, and

Vogt were all subject to at-will employment agreements; the employment agreements differed by

position but contained similar provisions on a duty of loyalty, confidentiality of information,

obligations regarding company property. ECF No. 1 ¶¶ 20, 22, 24, 25; ECF No. 1-1. The

employment agreements were wholly "at-will" employment agreements, so no party had "any

obligation . . . to extend, maintain, or continue Employee's employment with [EPM]". ECF No.

1-1 at 4.

The duty of loyalty provision prohibited employees from "assist[ing] or work[ing]" for any

other employer and "engag[ing] in any way in any mortgage lending or brokering, loan processing

or underwriting services . . . or other business or service of the same or similar nature." *Id.* at 2.

The employment agreements further contained confidentiality provisions, defining "Confidential

Material" as:

> [I]nformation available to or used in the business of Employee and (i) is proprietary to, about, or created by [EPM], (ii) gives [EPM] a competitive business advantage or the opportunity of obtaining such advantage or the disclosure of which would be detrimental to the interests of [EPM], or (iii) is designated as Confidential Material by [EPM], is known by Employee to be considered confidential by [EPM], or from all relevant circumstances should reasonably be assumed by Employee to be confidential and proprietary to [EPM].

*Id.* at 6.   The definition on "Confidential Material" expressly included "confidential and proprietary information provided to [EPM] by any actual or potential customer." *Id.* Lastly, the employment agreements defined "Company Property." It stated:

> All loans initiated and handled by Employee while employed by [EPM], and all related information, shall at all times remain the sole and exclusive property of [EPM]. Employee agrees to promptly return to [EPM] . . . upon termination of employment, all [EPM] property, including. . . any electronic communications equipment issued by [EPM], documents, files, correspondence, and notes, containing or relating to Confidential Material . . . including but not limited to information obtained from customers and prospective customers contacted by Employee, and the loans handled by Employee, while employed by [EPM], without keeping any copies.

*Id.* at 5. The Company Property provision prohibited employees from taking any such Company Property upon termination of their employment. *Id.*

Individual Defendants Owens and Watkins did not have Employment Agreements but instead signed "Non-Binding Employment Offer Letter[s]" upon joining EPM. ECF Nos. 106-17; 106-18; 106-20. The offer letters specified that the offer was "not to be considered a contract guaranteeing employment for any non-specific duration" and that EPM would "provide additional information about the company's objectives and policies, benefits programs, and general employment conditions" at the start of employment. *Id.*

The employment of all Individual Defendants was terminated by August 31, 2017, *id.*, and they became employed by FFI, another company providing mortgage products, shortly thereafter. ECF No. 106 at 3–7; ECF No. 104-1 at 1. Individual Defendants report that EPM took action that

3

made continuing employment unappealing. For instance, EPM cut the salaries of Coffman and Flohr. ECF No. 104-1 at 12. Further, Mr. Eddy Perez, then-President of EPM, told Coffman and Flohr to either terminate or take off salary all five salaried staff of the Baltimore branch. ECF No. 104-12. Prince similarly believed layoffs would occur at the Crofton branch as well. ECF No. 104-1 at 12. Individual Defendants contend that these EPM directives resulted in their choice to terminate employment with EPM. *Id.* at 3. Prior to terminating their employment at EPM, FFI officials had multiple contacts with the Individual Defendants, including: at least one phone call between Flohr and Mr. Chris Beisler of FFI, ECF No. 104-1 at 10, a phone call between Prince, Beisler, and Mr. Donnie Ritter of FFI, attendance at a baseball game by Vogt, Prince, Beisler, and Ritter, and a conference call between Prince, Flohr, and either Ritter or Beisler. ECF No. 104-1 at 10, 13.

After Individual Defendants terminated their employment with EPM, five laptops went unreturned. ECF No. 1 ¶¶ 74–75. Prior to their return to EPM, the laptops were held by Flohr at FFI's office. ECF No. 106-4 at 118. EPM contacted Flohr in September and October 2017 seeking the laptops in his possession but did not receive the laptops until October 25, 2017. ECF No. 106-13. EPM also contends that Individual Defendants were in possession of confidential customer loan information that they accessed at EPM and then brought to FFI. ECF No. 106 at 13. Individual Defendants were not paid some amount of owed compensation in unpaid commissions and wages, but parties disagree as to the amount. ECF No. 103-25; ECF No. 107-6.

Through discovery, EPM identified three key pieces of evidence on which it relies to support its claims of a coordinated effort by Defendants to steal EPM's business through use of its proprietary and confidential client information. *Id.* at 1. First, EPM and FFI each provided loan lists during the course of discovery that showed loans that had opened and closed at their respective

4

branches. ECF No. 106 at 13. EPM examined these lists, and pursuant to Fed.R.Evid. 1006, compiled a Loan Summary Chart that identified 38 loan files that originated at EPM with Individual Defendants and were closed at FFI with Individual Defendants. ECF No. 106-22. The Loan Summary Chart details the loan originators at EPM and then at FFI and includes Individual Defendants Case, Coffman, Fischer, Flohr, Vogt, and Watkins. *Id.* Second, deposition testimony by Vogt revealed that the Individual Defendants notified borrowers preapproved at EPM in August of 2017 that Individual Defendants were leaving EPM to work at a new institution and a specific instance when he referred an EPM loan customer to Fischer on July 14, 2017 to get the customer loan approval by FFI. ECF No. 106-14 at 102–103, 97–98. And finally, five laptops were in Individual Defendants possession for almost two months after their EPM employment terminated, and the laptops were not returned to EPM until October 25, 2017. ECF No. 106 at 9. Flohr held all of the laptops at the FFI office before they were returned. ECF No. 106-4 at 117–18. EPM conducted analysis on the laptops and determined they were accessed by Case and two non-parties after the Individual Defendants terminated their employment. ECF No. 106-13. Defendants and Counter-Plaintiffs contend this amount of factual evidence is insufficient to create a genuine dispute of material fact and bring both motions seeking judgment as a matter of law. ECF No. 109 at 1–2; ECF No. 108 at 3–4.

## PROCEDURAL BACKGROUND

On December 19, 2017, EPM filed a Complaint in this Court against Defendants detailing allegations that Individual Defendants and FFI as EPM's competitor "conspired . . . to attack [EPM] from within" by absconding with leads EPM purchased and developed for residential mortgage loans and customer loan information. ECF No. 1 ¶¶ 1–2. Individual Defendants

Coffman, Flohr, and Prince filed an Answer on January 16, 2018. ECF No. 3.[1] Individual

Defendants Case, Fischer, Owens, Vogt, and Watkins filed an Answer on April 6, 2018. ECF No.

7. FFI, in turn, filed a Motion to Dismiss for Failure to State a Claim on April 6, 2018, followed

by an Answer on March 7, 2019. ECF Nos. 10, 30. Individual Defendants Case, Coffman, Flohr,

Prince, and Vogt then filed a Counterclaim against EPM on February 22, 2019.[2] ECF Nos. 28, 29.

EPM filed an Answer to the Counterclaim on March 14, 2019. ECF Nos. 31, 32.

The parties filed a Joint Status Report with the Court on April 2, 2021 stating that written

discovery and twelve depositions had been completed. ECF No. 97. On May 28, 2021, Defendants

filed a Motion for Summary Judgment on all of EPM's claims, and Counter-Plaintiffs filed a

Motion for Partial Summary Judgment on their claims for breach of employment agreements and

violation of MWPCL. ECF Nos. 103, 104. EPM responded in opposition to both Motions on June

18, 2021. ECF Nos. 106, 107. Defendants and Counter-Plaintiffs then replied on July 9, 2021. ECF

Nos. 108, 109. This matter is now fully briefed, and the Court has reviewed the Motions and the

responses thereto. For the following reasons, the Court GRANTS Defendants' Motion in part and

DENIES Defendants' Motion in part (ECF No. 104), but GRANTS Defendants' Motion with

respect to Individual Defendant Owens, and the Court GRANTS Counter-Plaintiffs' Motion in

part and DENIES Counter-Plaintiffs' Motion in part (ECF No. 103).

---

[1] On March 22, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of all parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF Nos. 36, 37.
[2] Counter-Plaintiffs filed an Amended Counterclaim that same day with Intervenor Counter-Plaintiffs Joseph Cammauf, Armen Manokian, and Ryan Terpay. ECF No. 29. These Intervenor Counter-Plaintiffs were terminated as parties as of September 16, 2020.

<u>DISCUSSION</u>

## A. Standard of Review for Defendant's Motion for Summary Judgment

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth

7

specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). As noted, a genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 249). Thus, "to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Moss v. Parks Corp.*, 985 F.2d 736, 738 (4th Cir. 1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)).

### B. Analysis

1. Defendants' Motion for Summary Judgment

In its Motion, Defendants seek judgment as a matter of law on all counts: violation of the Maryland Uniform Trade Secrets Act ("MUTSA") by all Defendants; breach of contract by all Individual Defendants; tortious interference with contract by FFI; conversion by all Defendants; and unjust enrichment by all Defendants. ECF No. 104-1 at 2. Defendants argue that EPM has failed to provide factual evidence to support its allegations of a scheme among Defendants to leave EPM and steal its business and company property to benefit FFI and the Individual Defendants.[3]

---

[3] Defendants challenge the admissibility of EPM's Loan Summary Chart (ECF No. 106-23) in their Reply, claiming that it is inadmissible because evidence offered under Fed.R.Evid. 1006 must be accompanied by foundation testimony, citing case law from other jurisdictions and because it was not offered in discovery but as an exhibit to EPM's Opposition. These arguments are not compelling. First, no testimony requirement exists in the language of Rule 1006, its Advisory

*Id.* at 1. EPM contends that it has provided sufficient evidence to show a genuine dispute of material fact regarding its claim of a "concerted, clandestine effort" by FFI and Individual Defendants. ECF No. 106 at 2. The Court reviews each count in turn.

### Maryland Uniform Trade Secrets Act

To succeed on a claim that Defendants misappropriated trade secrets in violation of MUTSA, Plaintiff must show: "(1) the materials at issue qualify for protection as a trade secret and (2) Defendants misappropriated the materials." *Brightview Grp., LP v. Teeters*, No. CV SAG-19-2774, 2021 WL 1238501, at *4 (D.Md. Mar. 29, 2021). Under the MUTSA, misappropriation is the nonconsensual disclosure or use of a trade secret or the acquisition of a trade secret when Defendant "knows or has reason to know that the trade secret was acquired by improper means." Md. Code Ann., Com. Law II, § 11-1201(c); *see Brightview Grp., LP*, 2021 WL 1238501, at *9. Defendants may then be liable for misappropriation if they either acquire the trade secret by improper means or by "nonconsensual disclosure or use of the trade secret." *Brightview Grp., LP*, 2021 WL 1238501, at *9. *See* Md. Code Ann., Com. Law II § 11-1201(c). A trade secret concerns information of independent economic value that results from generally being unknown to others and subjected to secrecy. Md. Code Ann., Com. Law II § 11-1201(e). Customer information is

---

Committee Notes, or this jurisdiction. "Rule 1006 permits data summaries into evidence if 1) the data being summarized is 'voluminous,' 2) the summarization is 'an accurate compilation of the voluminous records sought to be summarized,' and 3) the underlying evidence being summarized is 'otherwise admissible in evidence.' *Sanchez Carrera v. EMD Sales, Inc.*, 402 F.Supp.3d 128, 143 (D.Md. 2019) (quoting *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004)). No testimony is required at this stage of the litigation. Second, Defendants mischaracterize EPM's Loan Summary Chart as providing new evidence outside of discovery. However, the Loan Summary Chart is rather a summary compiled from the "loan lists provided by EPM and FFI *during the course of discovery*." ECF No. 106 at 13 (emphasis added). The Loan Summary Chart offered pursuant to Rule 1006 is secondary evidence and is admissible "provided the original or duplicates from which the summaries were prepared were made available to the adverse party at a reasonable time in advance of trial for examination or copying." *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 576 (D.Md. 2007). Defendants' arguments are thus without merit.

considered a trade secret when the employer "invested time and resources in its development." *Ameritox, Ltd. v. Savelich*, 92 F.Supp.3d 389, 402 (D.Md. 2015).

Prior court decisions provide guidance on what constitutes the use of "improper means" to acquire trade secret information under the MUTSA. For instance, an employee used improper means constituting misappropriation when he transferred confidential documents for personal use and attempted to conceal his actions from his former employer. *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 314 (2004). *See also Md. Physician's Edge, LLC v. Behram*, No. CV DKC 17-2756, 2019 WL 4573417, at *6 (D.Md. Sept. 20, 2019). Moreover, employees who used information from their prior employer to replicate a similar system for their new employer similarly used improper means constituting misappropriation of trade secrets. *Ameritox, Ltd.*, 92 F.Supp.3d at 403 (reviewing email evidence among the employees in a preliminary injunction decision but analyzing the likelihood of success of a MUTSA claim). However, accidentally accessing and looking at a company's contract proposal was insufficient to show that the defendant had acquired or used the trade secret by improper means. *Systems 4, Inc. v. Landis & Gyr, Inc.*, 8 F.App'x. 196, 201 (4th Cir. 2001). Similarly, employees leaving their positions without any evidence that they had taken or used documents containing trade secrets could not sustain a claim that the employees then misappropriated the information. *Quality Sys. v. Warman*, 132 F.Supp.2d 349, 356 (D.Md. 2001).

Defendants here assert that EPM failed to provide evidence that the Defendants possessed trade secret information or that trade secret information was misappropriated. EPM however contends that it has provided such evidence in its Loan Summary Chart, Vogt's deposition testimony, and records showing the laptop access after Individual Defendants had terminated their employment at EPM. ECF No. 106 at 15. As an initial matter upon reviewing this evidence, the

10

Court will grant the motion for summary judgment with respect to Individual Defendant Owens. None of EPM's asserted evidence connects Owens to EPM's claims: she was not listed as a loan originator on any of the loans opened at EPM or closed at FFI, nor did she access the missing laptops after her employment ended. *See* ECF No. 106-22; 106-23; 106-13. Instead, EPM's main assertion is that Owens was terminated by Coffman and Flohr and told to contact FFI about potential employment. ECF No. 106 at 11. This decision came after Coffman and Flohr were informed by Eddy Perez, then-President of EPM, to terminate or take off salary all salaried employees. ECF No. 104-12. Being terminated at the direction of EPM leadership and seeking employment is surely insufficient to sustain a claim for misappropriation of trade secrets, especially because EPM provided no evidence to even link Owens to trade secret information. Therefore, there is no dispute of material fact with respect to EPM's claim against Owens, and she individually is entitled to judgment as a matter of law on EPM's MUTSA claim.

It is also important to note the atmosphere in which these acts of terminating employment were occurring. EPM was reducing and in one case eliminating the salaries of the managers at both branches, ECF No. 104-1 at 3, 8, 13, and telling the managers they need to terminate other employees and start over. ECF No. 104-12. The flight from EPM began after EPM itself took these actions. While EPM denies these facts, it offered no evidence to dispute that it reduced and eliminated salaries or that EPM then-President instructed managers that "[c]ome hell or high water . . . all 5 on salary either need to be terminated or off salary." *Id.*; ECF No. 106 at 6. There is no evidence presented to the Court that the employees would have terminated or had their employment terminated but for the actions of EPM.

Turning then to the remaining Defendants, the Court is tasked with viewing the evidence in a light most favorable to the non-moving party. *See Glynn*, 710 F.3d at 213. Considering this

11

standard, Defendants have failed to show they collectively are entitled to judgment as a matter of law because there exists a genuine dispute of material fact, though minimal, as to whether they used improper means to misappropriate EPM trade secrets. EPM has provided some evidence linking Individual Defendants with confidential data acquired from EPM that was then used to benefit FFI's business, so it has not failed to provide any evidence as in *Quality Sys.*132 F.Supp.2d at 356. Instead, EPM's evidence centers on loans, customer communications, and connections with FFI; it thus aligns more directly with the email evidence the Court discussed in *Ameritox, Ltd.* Like *Ameritox, Ltd.*, EPM's evidence links its former employees and information they acquired by virtue of their employment to their new employer, FFI, and its financial benefit. *See* 92 F.Supp.3d at 403. EPM's evidence provides a link between the confidential information, the Individual Defendants, and the harm to EPM in lost business. Therefore, though the evidence is minimal, EPM has proffered evidence to show a genuine dispute of material fact exists as to whether Defendants misappropriated trade secrets in violation of MUTSA. Defendants are thus not entitled to judgment as a matter of law on EPM's MUTSA claim.

### Breach of Contract

To succeed on a breach of contract claim, Plaintiff must show a contractual obligation by Defendant and a material breach of the contractual obligation. *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 655 (2010). Plaintiff must first assert an enforceable contract, formed by mutual assent, definite terms, and sufficient consideration. *See Thaler v. Donald J. Trump for President, Inc.*, 304 F.Supp.3d 473, 477 (D.Md. 2018), *aff'd*, 730 F.App'x 177 (4th Cir. 2018) (citing *CTI/DC, Inc. v. Selective Ins. Co. of America*, 392 F.3d 114, 123 (4th Cir. 2004)). Moreover, "[w]here one party makes a definite offer by letter and the other party accepts the offer unconditionally on the same terms on which it was made, the letters constitute a binding contract."

*Peoples Drug Stores v. Fenton Realty Corp.*, 191 Md. 489, 493 (1948). This Court has previously concluded that signed and accepted offer letters containing salary information create an enforceable employment agreement. *See Ikome v. CSRA, LLC*, No. PWG-17-3407, 2019 WL 3253391, at \*8 (D.Md. July 19, 2019); *Lehner v. ProSource Consulting LLC*, No. CV GLR-18-858, 2018 WL 6395539, at \*4 (D.Md. Dec. 6, 2018).

A breach of contract then is the "failure, without legal excuse, to perform any promise that forms the whole or part of a contract." *Kunda v. Morse*, 229 Md.App. 295, 304 (2016) (quoting *Weaver v. ZeniMax Media, Inc.*, 175 Md.App. 16, 51 (2007) (internal quotation marks omitted)). A breach is material if it affects the contract's purpose in an important way or goes to the "essence" of the agreement. *AirFacts, Inc. v. de Amezaga*, 502 F.Supp.3d 1027, 1044 (D.Md. 2020) (quoting 23 *Williston on Contracts*, § 63:3. (4th Ed. 2002) (internal quotation marks omitted)). A material breach requires that the non-breaching party be damaged or prejudiced, but it does not have to prove a specific amount of monetary damages. *Id.* at 1045 (footnotes and citation omitted). A question of whether a party materially breached a contract is typically a question for the fact finder unless it is "so clear that a decision can properly be given only one way." *Sunbelt Rentals, Inc. v. Verticon Constr., Inc.*, No. DLB-18-3134, 2019 WL 6618661, at \*4 (D.Md. Dec. 5, 2019) (quoting *Publish Am., LLP v. Stern*, 216 Md.App. 82, 102 (2014) (internal quotation marks omitted)).

Even when a contract does not contain a specific promise, employment contracts under Maryland law still contain an implied duty of loyalty for employees to act to benefit their employers within the scope of their employment. *ComRent Int'l, LLC v. Thomson*, No. RBD-20-3757, 2021 WL 1733471, at \*7 (D.Md. May 3, 2021) (quoting *Philips North Am. LLC v. Hayes*, No. ELH-20-1409, 2020 WL 5407796, at \*10 (D.Md. Sept. 9, 2020)). Misappropriation of trade secrets or encouraging collective employee resignation would constitute a breach of the implied

13

duty of loyalty. *Id.* (citing *EndoSurg Medical Inc. v. EndoMaster, Inc.*, 71 F.Supp.3d 525, 556 (D.Md 2014)). An employee breaches the duty when he or she accesses or uses confidential information after terminating employment to benefit his or her new employer. *Id.*

Defendants contend that EPM failed to support its breach of contract claim in two respects: first, Owens and Watkins did not have employment agreements and thus have no privity of contract with EPM to sustain a breach of contract claim, and second, EPM provided no evidence to support that the remaining Individual Defendants breached their employment agreement by taking leads and loans from EPM to FFI. ECF No. 104-1 at 17–19. In opposition, EPM asserts that Owens and Watkins were still subject to their signed EPM employment offer letters, which referenced general employment conditions. ECF No. 106 at 17–19, and that the Loan Summary Chart and deposition testimony is evidence of Individual Defendants' breaches. *Id.* at 18.

Considering Defendants' first argument, the Court concludes that there is no genuine dispute of material fact that Owens and Watkins were subject to an employment agreement based on their signed employment offer letters. This Court has previously explained that a signed offer letter, including salary, "is an employment contract." *Ikome*, 2019 WL 3253391, at *8. Such letters were exactly the agreement between Owens and Watkins and EPM here. The fact that their employment letters were titled "non-binding" is clarified by the letter's statement that "[t]his offer is not to be considered a contract guaranteeing employment for any specific duration" given that it concerns an at-will employment and because the employment offer would be rescinded should the employee not pass the background check. ECF No. 106-17. Owens and Watkins are then bound to an implied duty of loyalty to EPM, a duty that included not misappropriating trade secrets, like customer loan information. *See ComRent Int'l, LLC*, 2021 WL 1733471, at *7.

14

Moving to Defendant's next argument on whether EPM has raised sufficient evidence to show a genuine dispute of material fact that Individual Defendants materially breached their enforceable employment agreements, the Court's analysis mirrors its discussion of the MUTSA claim. As with EPM's MUTSA claim, the Court will again grant summary judgment as an initial matter for Individual Defendant Owens with respect to EPM's claim for breach of contract. EPM needed to show evidence creating a genuine dispute of material fact that Owens breached her implied duty of loyalty by misappropriating EPM's trade secrets. EPM has simply failed to provide any evidence linking Owens to trade secret information or misappropriating such information with FFI, and thus no dispute of fact exists. Owens is entitled to summary judgment on EPM's breach of contract claim.

With respect to the remaining Individual Defendants, the EPM employment agreements contained three relevant provisions: a Company Property provision, a duty of loyalty provision, and a confidentiality provision. ECF No. 1-1. First, the agreement provided for the handling of Company Property following termination. It states:

> All loans initiated and handled by Employee while employed by [EPM], and all related information, shall at all times remain the sole and exclusive property of [EPM]. Employee agrees to promptly return to [EPM]. . . upon termination of employment, all [EPM]property, including. . . any electronic communications equipment issued by [EPM], documents, files, correspondence, and notes, containing or relating to Confidential Material . . . including but not limited to information obtained from customers and prospective customers contacted by Employee, and the loans handled by Employee, while employed by [EPM], without keeping any copies.

*Id.* at 5. The agreement further contained a duty of loyalty requirement that "[e]mployee shall assist and work for only [EPM] and no other employer . . . and shall not engage in any way in any mortgage lending or brokering, loan processing, . . . or other business or service of a same or similar nature." *Id.* at 2. Finally, the employment agreement defined "Confidential Material" as

including "confidential and proprietary information provided to [EPM] by any actual or potential customer" and stated that such material is a trade secret and "the exclusive and confidential property of [EPM]." *Id.* at 6.

It is undisputed that five of Individual Defendants' laptops were in Flohr's possession at FFI's office for over a month, despite the employment agreement requiring a prompt return. ECF No. 106-4 at 117–18; ECF No. 106 at 9. This is a technical breach of the employment agreement. *See AirFacts, Inc.*, 502 F.Supp.3d at 1044 ("Defendant breached the Employment Agreement by retaining some confidential documents and obtaining and misappropriating trade secrets and confidential information. The question remains, however, whether the breachers were 'material.'"). In addition, the evidence about loans opened at EPM and closed at FFI and Vogt's testimony about connecting clients to FFI while still at EPM raise sufficient dispute as to whether Watkins breached her implied duty of loyalty and whether the remaining Individual Defendant's breached their employment agreements with respect to company property, loyalty, and confidentiality. EPM also provided expert testimony on damages resulting from the alleged theft of the loan information. While such information is not definite, that is not required at this stage to sustain a breach of contract claim. *See id.*

The only remaining question then is whether EPM provided evidence to show a genuine dispute of material fact that the Individual Defendants materially breached the employment agreements. EPM's claim relates to confidential and proprietary information the Individual Defendants received in the course of their employments that was intended to benefit EPM. The allegation and its supporting evidence are that the Individual Defendants then used that information to benefit a new employer, in breach of their employment agreements. Thus, a claim that Individual Defendants diverted information they gained in the scope of their employment creates a genuine

16

dispute for the fact finder as to whether such a breach goes to the purpose of the contract. *See id.*;
*Sunbelt Rentals, Inc.*, 2019 WL 6618661, at *4. A genuine dispute of material fact exists then as
to whether a breach occurred and whether that breach was material. As such, Defendants are not
entitled to judgment as a matter of law.

### Tortious Interference of Contract

A claim for tortious interference requires Plaintiff show "(1) existence of a contract
between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's
intentional interference with that contract; (4) breach of that contract by the third party; and (5)
resulting damages to the plaintiff." *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 466 (1991). *See
Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F.Supp.2d 475, 479–80 (2005).
Defendant must know of an existing contract and then improperly induce a third party to breach
that contract. *Mixter v. Farmer*, 215 Md.App. 536, 548 (2013).

When a contract exists between two parties, a third party's right to interfere in that contract
is narrowly restricted; however, a third party has a "broader right to interfere" when a contract is
terminable at will. *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69–70 (1984). "[I]f the contract
is terminable at will, there is no legal assurance of future performance; thus a competitor who
intentionally causes a third person not to continue an existing contract terminable at will does not
improperly interfere with the contractual relation if no wrongful means are employed." *Macklin v.
Robert Logan Assocs.*, 334 Md. 287, 305 (1994). When an employment agreement is "partially"
terminable at will, however, Defendant may be liable for inducing an employee to violate his or
her covenants to not compete in the employment contract. *Fowler*, 89 Md.App. at 468 (quoting
Restatement (Second) of Torts, § 768).

The use of "wrongful means" to tortiously interfere in a terminable at-will contract must be "far more egregious" then the Defendant sending a letter to the third party. *Ultrasound Imaging Corp.*, 358 F.Supp.2d at 480. *See K&K Mgmt. v. Lee*, 316 Md. 137, 166 (1989). Such examples of wrongful means include violence, intimidation, defamation or injurious falsehoods, and criminal acts. *Barclay v. Castruccio*, 469 Md. 368, 376 (2020). Inducement is not a wrongful act if it merely results in a breach of contract with an "incidental effect on plaintiff's business relationships." *Volcjak v. Washington Cnty. Hosp. Ass'n*, 124 Md.App. 481, 512–13 (1999). Simply inducing a third party to exercise his or her option to cancel performance in light of a better deal from Defendant is insufficient to constitute wrongdoing. *Macklin*, 334 Md. at 307.

In this case, EPM's tortious interference with contract claim turns on both whether FFI intentionally interfered with Individual Defendants' employment agreements with EPM and whether the Individual Defendants then breached their employment agreements as a result. On both issues, EPM's at-will employment agreements are determinative. EPM's employment agreements are at-will employment agreements, stating: "the parties . . . agree and acknowledge that the employment relationship between them is wholly an 'at-will' relationship, and neither Party shall have any obligation . . . to extend, maintain, or continue Employee's employment with [EPM]." ECF No. 1-1 at 4. Therefore, to succeed in claiming that FFI tortiously interfered in Individual Defendants' at-will contracts, EPM would need to show that FFI utilized wrongful means in the form of violence, intimidation, criminal behavior, and the like. *See Barclay*, 469 Md. at 376. Instead, EPM relies exclusively on its belief that FFI is part of a scheme with its former employees. EPM asserts phone calls and baseball games between the Individual Defendants and FFI, but no "egregious" behavior that would warrant tortious interference in an at-will contract. ECF No. 106 at 5. *See Ultrasound Imaging Corp.*, 358 F.Supp.2d at 480. EPM's little evidence is

even less compelling when considering its own decisions to terminate employees and cut their salaries. ECF No. 104-1 at 3.

Moreover, even if FFI's undisputed actions to simply contact Individual Defendants to discuss employment were sufficient to mark tortious interference—which the Court does not conclude that it is—EPM is still unable to show a genuine dispute of fact that FFI's actions then resulted in a breach to its at-will employment agreements. EPM's own employment agreement states that "neither Party shall have any obligation" to continue their employment at EPM. Therefore, no breach occurred when the Individual Defendants opted to terminate their employment. The same reasoning applies for Owens and Watkins employment letters: the letters definitively state an at-will employment relationship that is not ensured for any amount of time. ECF No. 106-17; 106-18; 106-20. Without a breach of contract, the claim for tortious interference then fails. *See Fowler*, 89 Md.App. at 466.

EPM in its opposition suggests that its employment agreements are like the "partially terminable" at-will employment agreements discussed in *Fowler*. ECF No. 106 at 17. This argument fails in two obvious ways. First, EPM's own employment agreement clearly states that the employment agreements are "wholly an at-will" relationship. ECF No. 1-1 at 4. The assertion that the Court should treat the relationship as a partially terminable at-will employment agreement, in contrast to the express language of the contract, is without legal basis. *See The Redemptorists v. Coulthard Servs.*, 145 Md.App. 116, 144–45 (2002) ("[W]here the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court."). However, even if the Court did allow for such an assertion, *Fowler* would still not be applicable because it concerns a defendant intentionally interfering with an employee's restrictive covenant not to compete—regarding limitations on an employee's future

19

employment—and not what EPM has alleged here. There is thus no genuine dispute of material fact that FFI did not induce Individual Defendants to breach their employment agreements, and FFI is entitled to judgment as a matter of law.

### Conversion

To succeed on a claim of conversion, Plaintiff must allege Defendant physically acted with a "distinct act of ownership or dominion" over "the personal property of another in denial of his rights or inconsistent with it" and had "an intent to exercise a dominion or control over the goods" inconsistent with the other person's rights. *Darcar Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 262 (2004) (quoting *Keys v. Chrysler Credit Corp*, 303 Md. 297, 414 (1985)). *See Forest Capital, LCC v. BlackRock, Inc.*, 658 F.App'x 675, 683 (4th Cir. 2016). Plaintiff must show a serious interference with its rights to possess the property; factors to weigh in determining a serious interference include: (1) the nature and length of Defendant's control; (2) Defendant's intent to displace Plaintiff's control; (3) Defendant's good faith; (4) the nature and length of Plaintiff's right of control; (5) harm to the property; and (6) Plaintiff's inconvenience and expense. *Diamond v. T. Rowe Price Associates, Inc.*, 852 F.Supp. 372, 411 (D.Md. 1994).

Conversion deprives a person of their personal property and requires more than mere temporary interference, but control and dominion "to the complete exclusion of the rightful possessor." *Thomas v. Artino*, 723 F.Supp.2d 822, 834 (D.Md.2010) (quoting *Yost v. Early*, 87 Md.App. 364, 388 (1991)). Thus, claims for conversion require both a showing that the deprivation was more than a temporary interference, if there is no damage, and that the plaintiff was completely excluded from use or control of the property. *Diamond*, 852 F.Supp. at 410.

In *Yost v. Early*, the court opined on the meaning of temporary interference and explained that moving one copy of a manuscript that existed elsewhere, for a short time, and returning it

undamaged was "far too insubstantial an interference with property rights to demonstrate conversion." 87 Md.App. 364, 388–89 (1991) (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 201 (2d Cir. 1983)). This Court has previously concluded that neither the "intentional use of [Plaintiff's] equipment," *EDI Precast, LLC v. Carnahan*, 982 F.Supp.2d 616, 629 (2013), nor taking documents for five months when Plaintiff suffered no harm is sufficient interference to sustain a conversion claim. *Diamond*, 852 F.Supp. at 411.

An interference is also not sufficiently serious to sustain a conversion claim if Plaintiff fails to prove it was completely excluded from using the personal property. *See Artino,* 723 F.Supp.2d at 834. This Court previously found that a defendant that maintained control of a customer list was not liable for conversion because plaintiffs did not allege that they were excluded from using the list. *Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.,* No. 05–2882 2006 WL 2572474, at *23 (D.Md. Sept. 5, 2006). Using a plaintiff's sales data, regardless of whether it was proper, was similarly not a serious enough interference to prove conversion when the plaintiff failed to provide evidence that it was completely denied access to the data. *See Home Paramount Pest Control Cos. v. FMC Corp./Agric. Prods. Group,* 107 F.Supp.2d 684, 693 (D.Md. 2000). Emailing company information and data to one's personal email account also was insufficient to prove conversion without more to show that the plaintiffs were no longer free to use or access the information taken. *3PD, Inc. v. U.S. Transp. Corp.*, No. GJH-13-2438, 2015 WL 4249408, at *5 (D.Md. July 9, 2015).

EPM conceivably asserts two categories of personal property that it contends were subject to conversion: the EPM laptops and the customer loan information. With respect to the laptops, there is no dispute that the laptops were not returned to EPM until October 25, 2017. ECF No. 106-13; ECF No. 104-1 at 21. EPM was thus excluded from use of the laptops while they were not physically in its possession. The question of whether the temporary deprivation of the laptops

constitute a conversion rests on whether the Individual Defendants' possession of laptops was a serious interference—more than merely temporary—in EPM's use and control of its personal property. *See Thomas*, 723 F.Supp.2d at 834.

The retention of the laptops by Individual Defendants then is simply not sufficient to constitute more than a temporary interference in EPM's right to possess the laptops. The *Diamond* factors on serious interference are instructive here. 852 F.Supp. at 410. While EPM may be able to support that Individual Defendants acted with bad faith and with intent to deprive EPM of its laptops that it had the right to control, the remaining factors and case law support that this was a temporary interference in EPM's ownership of the laptops. EPM has not provided evidence to support that it was harmed by not having the laptops or that the laptops themselves were harmed for the brief period of time. Nor has it provided evidence that it was subject to a great expense because the laptops were withheld. Like in *Diamond*, losing temporary access to five laptops for less than two months—without more evidence of hardship or damage does not constitute conversion. *See Yost*, 87 Md.App. at 388–89.

The alleged use of customer loan information is similarly not sufficient to show that EPM was completely excluded from using or accessing the information. Even if EPM has provided more to show that the taking of loan information was more than a temporary interference, it still failed to provide evidence to show it was completely, or even partially, deprived of the customer loan information that it alleges Defendants wrongfully took. See *Thomas*, 723 F.Supp.2d at 834. EPM further did not provide any evidence that it did not continue to have access to the loan and lead information at issue after Individual Defendants terminated their employment. Instead, EPM focuses on the fact that the Individual Defendants retained and took the information, but its own continued access to that property has not been disputed. Thus, no genuine dispute of material fact

exists with respect to EPM's conversion claim, and Defendants are entitled to judgment as a matter of law.

### Unjust Enrichment

To succeed on a claim for unjust enrichment, Plaintiff must show that it conferred a benefit upon Defendants, that Defendants knew or appreciated the benefit, and that Defendants accepted the benefit "under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Robinson v. Fountainhead Title Grp. Corp.*, 447 F.Supp.2d 478, 493 (D.Md. 2006) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n.7 (2000)). An unjust enrichment claim is a quasi-contract claim and thus will fail if an express contract exists. *Hebbeler v. First Mariner Bank*, No. CV ELH-17-3641, 2020 WL 1033586, at *23 (D.Md. Mar. 2, 2020); *Janusz v. Gilliam*, 404 Md. 524, 537 (2008). Moreover, an unjust enrichment claim based on misappropriation of trade secrets is displaced by a claim brough under the MUTSA. Md. Code Ann., Com. Law II § 11-1207(a) ("[T]his subtitle displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret.").

Here, both EPM and Defendants contend that an unjust enrichment claim will fail if there is an enforceable employment agreement between EPM and Individual Defendants. ECF No. 106 at 20–21; ECF No. 104-1 at 23. Both parties also agree that such employment agreements exist between EPM and Case, Coffman, Fischer, Prince, and Vogt. ECF No. 106 at 20–21; ECF No. 104-1 at 2–3. Therefore, EPM's only grounds for asserting an unjust enrichment claim are against Owens and Watkins, who both signed employment offer letters with EPM, and against FFI. The Court's analysis *supra* with regard to Owens and Watkins is applicable here: their employment

offer letters were sufficient to establish an enforceable employment agreement, *see Ikome*, 2019 WL 3253391, at *8, so an unjust enrichment claim will similarly fail with respect to them.

EPM also failed to show evidence to prove a genuine dispute of material fact that FFI was unjustly enriched. Namely, EPM provided no evidence to support that it conferred a benefit to FFI that FFI accepted, outside of its argument that Individual Defendants provided its confidential and proprietary customer information to FFI while still employed for EPM. Thus, EPM's entire claim for unjust enrichment against FFI relies on allegations of trade secret misappropriation, which is preempted by it MUTSA claim. *See* Md. Code Ann., Com. Law II § 11-1207(a). Without more, EPM has failed to show a genuine dispute of material fact that it conferred a benefit to FFI. Thus, Defendants are entitled to judgment as a matter of law on the unjust enrichment claim.

    2.  <u>Counter-Plaintiffs' Motion for Partial Summary Judgment</u>

In their Motion, Counter-Plaintiffs seek judgment as a matter of law on two counts: Count One, breach of employment agreements, and Count Two, violation of the Maryland Wage and Payment Collection Law ("MWPCL"). ECF No. 103-1 at 2. Counter-Plaintiffs argue that EPM has failed to provide evidence to dispute that it failed to pay Counter-Plaintiffs their outstanding wages. *Id.* In its Response to Counter-Plaintiffs' Motion, EPM contends that it has not provided owed wages as a result of a bona fide dispute with Counter-Plaintiffs, illustrated by EPM's Complaint against Counter-Plaintiffs.

**Breach of Employment Agreement**

As detailed *supra* in the Court's analysis of Defendants' breach of contract claim, a breach of contract action requires that Counter-Plaintiffs assert that Defendant materially breached a contractual obligation. *See RRC Northeast, LLC*, 413 Md. at 655. In the context of employment agreements, when an employee materially breaches a duty owed to his or her employer, the breach

24

may extinguish the employer's obligation to pay future compensation. *St. Paul at Chase v. Manufacturers Life Ins. Co.,* 262 Md. 192, 217–18, *cert. denied,* 404 U.S. 857 (1971). "Once an employee has breached the contract, he cannot subsequently force the employer to perform except in unusual circumstances, e.g., if the employee has a vested right to commissions which accrue at a date subsequent to his breach." *Storetrax.com, Inc. v. Gurland,* 168 Md.App. 50, 74 (2006), *aff'd,* 397 Md. 37 (2007). An employer is then excused from a payment obligation when an employee materially breaches his or her contract terms. *See id.* at 73. A material breach is one that affects the contract's purpose in an important way. *AirFacts, Inc. v. de Amezaga,* 502 F.Supp.3d 1027, 1044 (D.Md. 2020). The determination of whether a breach was in fact material is typically a question for the fact finder. *Rentals, Inc. v. Verticon Constr., Inc.*, No. DLB-18-3134, 2019 WL 6618661, at *4 (D.Md. Dec. 5, 2019). Summary judgment is thus improper when there is a genuine dispute as to whether the breach giving rise to the conflict is material. *Weichert Co. of Maryland v. Faust,* 419 Md. 306, 320 (2011) (citing *Regal Savings Bank v. Sachs,* 352 Md. 356, 363 (1999)).

Similar to EPM's claim for breach of contract, EPM has provided evidence to show a genuine dispute with regard to whether Counter-Plaintiffs materially breached their employment agreement, to support EPM's decision to withhold compensation. As detailed extensively in the analysis of Defendants' Motion, it is undisputed that Company Property (the laptops) were not immediately returned despite being required by the employment agreement. ECF No. 106-4 at ¶17–18; ECF No. 106 at 9. EPM has further provided evidence linking 38 loans that were originated at EPM with Individual Defendants to closure at FFI after the Individual Defendants began their new employ. ECF No. 106-22. Vogt's deposition testimony included reference to referring Individual Defendants' clients at EPM to FFI upon their decision to join FFI. ECF No.

25

106-14 at 97–98. These facts raise a question of both whether Counter-Plaintiffs breached their employment agreements and whether that breach was material, and both of those are to be resolved by the ultimate fact finder. *See Rentals, Inc.*, 2019 WL 6618661, at *4. Viewing the facts in a light most favorable to EPM as the non-moving party, EPM does raise a genuine dispute of whether Counter-Plaintiffs materially breached their employment agreements to justify EPM then withholding compensation. Counter-Plaintiffs are thus not entitled to summary judgment on their claim for breach of employment agreement.

### Maryland Wage and Payment Collection Law

MWPCL states that "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505. If an employer fails to pay an employee's wages in violation of the MWPCL and not as a result of a bona fide dispute, "the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees." *Id.* at § 3-507. *See Horlick v. Cap. Women's Care, LLC*, 896 F.Supp.2d 378, 387–88 (D.Md. 2011); *Friolo v. Frankel*, 373 Md. 501, 516 (2003). MWPCL "expressly limits" when an employer may withhold wages, and "[a] material breach of an employment agreement is not one of the enumerated circumstances." *Imgarten v. Bellboy Corp.*, 383 F.Supp.2d 825, 846 (D.Md. 2005) (citing Md. Code Ann., Lab. & Empl., § 3-503 (1999)). In *Imgarten*, this Court thus concluded that an employee's alleged material breach of the employment agreement did not permit the employer to withhold remaining pay from the employee under the MWPCL, because it was not an enumerated circumstance. *Id.*

An employer who is liable for unpaid wages is only subject to treble damages or attorneys' fees when there is no bona fide dispute as to the payment. *Horlick*, 896 F.Supp.2d at 387–88;

*Admiral Mortg. v. Cooper*, 357 Md. 533, 541 (2000). "[A] 'bona fide dispute' is 'a legitimate dispute over the validity of the claim or the amount that is owing [ ]' where the employer has a good faith basis for refusing an employee's claim for unpaid wages." *Macsherry v. Sparrows Point, LLC*, No. CV ELH-15-22, 2017 WL 3315262, at *32 (D.Md. Aug. 3, 2017) (quoting *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 657 (2014)). The inquiry focuses on an employer's "actual, subjective belief" that it is "objectively and reasonably justified" to withhold the wages. *Id.* (quoting *Peters*, 439 Md. at 657 (internal quotation marks omitted)). The determination of whether there is a bona fide dispute at the time of the employee's termination is "a question of fact left for resolution by the jury, not the trial judge." *Horlick*, 896 F.Supp.2d at 387–88 (citing *Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 396 (2001)).

Here, EPM contends there is a bona fide dispute as to whether Counter-Plaintiffs materially breached their employment agreements, specifically the duty of loyalty, the provision on confidential material, and the prohibition on using Company Property for third parties. ECF No. 107 at 7. EPM's argument turns on the existence of a bona fide dispute, however it is misplaced: MWPCL does not permit an employer to withhold wages from a terminated employee on the basis of a bona fide dispute. It instead states that a bona fide dispute affects the determination of damages to which employees may be entitled. Md. Code Ann., Lab. & Empl. § 3-507. A material breach is not an enumerated exception to permit employers to withhold wages. *See id.* at § 3-505; *Imgarten*, 383 F.Supp.2d at 846. Therefore, because it is undisputed that EPM denied Counter-Plaintiffs their remaining wages as a result of a breach of the employment agreements, Counter-Plaintiffs are entitled to judgment as a matter of law on their MWPCL claim.

Counter-Plaintiffs' motion then turns to the question of damages and attorneys' fees. While there is no dispute with regard to Counter-Plaintiffs' MWPCL claim, there remains a genuine

dispute of material fact with regard to whether EPM withheld wages due to a bona fide dispute. The entire staff of an EPM's office left in the same month. ECF No. 107 at 5–6, ¶ 20. Laptops were not returned, and EPM had to correspond with one Counter-Plaintiff over the course of almost two months to have the laptops returned. *Id.* EPM was concerned that Counter-Plaintiffs had accessed the laptops for information after they terminated their employment, ECF No. 107-10, and found evidence of that fact. *Id.* EPM began collecting data on loans that were opened with EPM and closed with the Counter-Plaintiffs' new employer. *Id.* This evidence is sufficient to raise a genuine dispute as to whether a bona fide dispute existed in light of EPM's good faith belief of a material breach of the employment agreements. *See Hausfeld*, 131 F.Supp.3d at 464; *Rogers*, 362 F.Supp.2d at 648. This is further bolstered by case law from this Court that whether a bona fide dispute exists as to withholding pay is traditionally a question for the ultimate fact finder. *See Horlick*, 896 F.Supp.2d at 387–88. Therefore, Counter-Plaintiffs are not entitled to judgment as a matter of law on trebled damages.

The decision whether to award attorneys' fee, in contrast, is a question for the Court, and not the jury. *Admiral Mortg., Inc.*, 357 Md. at 551–52. However, like treble damages, attorneys' fees are only recoverable under a MWCPL claim "in those situations where the employer acted willfully—in the absence of a bona fide dispute," and thus the Court may not award attorneys' fees unless the factfinder determines that no bona fide dispute existed for employer to withhold funds. *Programmers' Consortium, Inc. v. Clark*, 409 Md. 548, 555 (2009) (quoting *Friolo*, 373 Md. at 517). Given that a genuine dispute of material fact exists as to whether EPM had a good faith belief in a bona fide dispute to warrant withholding Counter-Plaintiffs' wages, an award of attorneys' fees is premature at this time.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds there are genuine disputes of material fact regarding EPM's MUTSA and breach of contract claims, but not regarding Plaintiff's tortious interference in contract, conversion, and unjust enrichment claims. Accordingly, Defendants' motion for summary judgment is GRANTED in part, and DENIED in part. However, Defendants' Motion is GRANTED for all claims with respect to Individual Defendant Owens. The Court also finds also that there are genuine disputes of material fact with regard to Counter-Plaintiffs' counterclaim for breach of employment agreement and with respect to damages and attorneys' fees, but not regarding their MWCPL counterclaim. Thus Counter-Plaintiff's Motion for partial summary judgment is GRANTED in part, and DENIED in part. A separate Order will follow.

Date: _2 September 2021_

_____
A. David Copperthite
United States Magistrate Judge

29